JUDGE SCHOFIELD

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

IMPULSE RADIO LLC,

Plaintiff,

v.

IBIQUITY DIGITAL CORP. and IHEARTMEDIA, INC.,

Defendants.

Civil Action No.

15 CV 02725

RECEIVED
APR 08 2015
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT AND JURY DEMAND

Plaintiff Impulse Radio LLC, successor in interest to Impulse Radio, Inc. ("Impulse"), alleges as follows against Defendants iHeartMedia, Inc., formerly CC Media Holdings, Inc. ("iHeartMedia"), and iBiquity Digital Corporation ("iBiquity").

### NATURE OF THE ACTION

1. Founded in 1999, Impulse has received industry-wide recognition for pioneering technologies that deliver a new and exciting experience to listeners of an emerging radio system known as In-Band/On-Channel ("IBOC") broadcasting, now incorporated in HD Radio broadcasting technology. Impulse invented and patented technology that supplements audio broadcasts with "data services" that present interactive data to listener devices. These data services can take a variety of forms, including the provision of album art, artist and title information, traffic, weather and news information and advertisements, as well as enabling an interactive listening experience such as the purchase of music with the touch of a button by integrating the data in the radio broadcast with a music selling service. These innovations enable HD Radio broadcasters to offer a more dynamic and marketable multi-media radio experience.

2.      Defendant iHeartMedia utilizes Impulse's technology and, in doing so, infringes U.S. Patent No. 7,908,172 entitled "System and Method for Generating Multimedia Accompaniments to Broadcast Data" (the "'172 Patent").

3.      Defendant iBiquity brazenly represents to broadcasters that it has a license to Impulse's patented and proprietary technology and the right to sublicense that technology to broadcasters, including iHeartMedia, as part of iBiquity's HD Radio software and services. No such license or right to sublicense exists.

4.      Impulse is commencing this suit to end iHeartMedia's and iBiquity's continued infringement and iBiquity's false claim to Impulse's technology.

## THE PARTIES

5.      Impulse is a limited liability company organized under the laws of Delaware with a principal place of business in New York, New York. Impulse is the successor in interest to Impulse Radio, Inc., a Delaware corporation which had a principal place of business in New York. Impulse is the owner of all rights and title to the '172 Patent.

6.      On information and belief, iHeartMedia, formerly CC Media Holdings, Inc., is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in San Antonio, Texas, and maintains executive offices in New York, New York. On information and belief, iHeartMedia and/or one or more of its subsidiaries own approximately 850 radio stations serving more than 150 markets in the United States, including markets in New York, that broadcast HD Radio program channels using HD Radio transmission technology licensed from iBiquity. On further information and belief, iHeartMedia also broadcasts these stations and other radio stations that it owns into New York through its website, www.iheartmedia.com.

7. On information and belief, iHeartMedia is the parent company of iHeart Communications, Inc. and iHeart Media & Entertainment, Inc. iHeart Communications, Inc., formerly Clear Channel Communications, Inc., is a corporation organized and existing under the laws of the State of Texas with a principal place of business in San Antonio, Texas. iHeart Media & Entertainment, Inc., formerly Clear Channel Broadcasting, Inc., is a corporation organized and existing under the laws of the State of Nevada with a principal place of business in San Antonio, Texas. iHeart Media & Entertainment, Inc. is registered with the New York Department of State, Division of Corporations, to do business in New York as a foreign corporation. If necessary and appropriate, Impulse will add iHeart Communications, Inc. and/or iHeart Media & Entertainment, Inc. as defendants to this Complaint.

8. On information and belief, iHeartMedia directly or indirectly owns Citicasters Licenses, Inc., AMFM Radio Licenses LLC, CC Licenses, LLC, and Capstar TX LLC. On further information and belief, these entities hold the licenses from the Federal Communications Commission to broadcast digital radio in New York. If necessary and appropriate, Impulse will add these licensees as defendants to this Complaint.

9. On information and belief, iBiquity is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Columbia, Maryland. On information and belief, iBiquity claims to be the owner of all trademark rights in "HD Radio™" and licenses certain IBOC technology under the HD Radio brand to radio broadcasters across the nation, including broadcasters in New York.

## JURISDICTION AND VENUE

10. This action arises in part under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a) and 2202, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

12. Personal jurisdiction over the Defendants in New York is proper under N.Y. C.P.L.R. §§ 301 and 302(a).

13. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) - (d) and 1400(b).

## FACTUAL BACKGROUND

### IMPULSE'S INNOVATIVE TECHNOLOGY

14. Impulse was founded in 1999 by a group led by David Corts and Paul Signorelli, current members of Impulse and named inventors of the '172 Patent, to pioneer the development of innovative technology aimed at creating a new, interactive radio experience.

15. Traditionally, radio stations beamed an analog signal over AM and FM frequencies that had limited sound quality and consisted only of audio transmissions with limited capability to send very small amounts of data. On any station on the radio dial, the listener experienced either music or talk.

16. By the late 1990's, digital formats like CDs had surpassed analog radio in sound quality, and new formats like mp3s and satellite radio were on the commercial horizon. To keep pace, terrestrial AM/FM radio had to innovate.

17. This innovation came in the form of a radio transmission technology called In-Band/On-Channel, or IBOC, broadcasting. IBOC broadcasting permits the transmission of a digital radio signal alongside an analog signal over the same frequency. The transmission of both the digital and analog radio signals simultaneously over the same frequency is called "hybrid" transmission. The "In Band" means that the hybrid signal uses existing AM and FM

broadcast bands. The "On Channel" means that the hybrid signal travels over current frequency assignments.

18.   The radio broadcasting industry originally viewed improved sound quality as the primary advantage of IBOC broadcasting and typically promoted IBOC broadcasting as enhancing AM radio to sound like FM radio and FM radio to sound like CDs.

19.   The business premise of Impulse was that there was a value proposition in the provision of data services like artist and title information, album art display, interactive advertisements, news, weather and traffic information, and the ability for consumers to purchase music with the touch of a button. These and other potential data services would individually and collectively deliver a more engaging radio experience than traditional analog radio and make IBOC broadcasting more commercially viable. The company name "Impulse" captures the visceral impact of a data-enhanced radio experience.

20.   Impulse viewed its enhanced experience technology as an indispensable element in solving the "chicken and egg" problem that beset the broadcast industry at the time: broadcasters were hesitant to invest in an upgraded signal without receivers in the marketplace capable of receiving that signal and rendering the associated enhanced benefits to the customer, while manufacturers were hesitant to invest in making new consumer electronics products to take advantage of such enhanced benefits without widely available signals delivering them. The availability of data services was a central part of the value proposition to all stakeholders – by making radio broadcasting a richer experience, consumers would have more reason to acquire new HD Radio receivers and thus manufacturers would have reason to manufacture receivers in the face of consumer demand, and broadcasters would see that it was up to them to take a leadership role in ushering this new IBOC experience to the marketplace.

21. Impulse invented and developed, among other things, technology that would enable broadcasters to enhance IBOC broadcasting with a dynamic system of coordinating supplemental data for transmission with the main program audio that would appear visually or aurally to consumers, either in real-time or stored for later delivery at the demand of consumers. Impulse also invented and developed transmission-side and receiver-side technology for the presentation and synchronization of digital data on consumer devices.

22. Impulse quickly was recognized throughout the industry as a leading innovator and developer of dynamic new radio data systems and applications that are now utilized by HD Radio broadcasters, including iHeartMedia.

### THE '172 PATENT

23. Since early 2000, Impulse has sought protection for its enhanced data service innovations and cutting-edge technologies by filing patent applications directed at both transmission-side and receiver-side technologies. To date, Impulse has been awarded several patents and also has additional applications pending before the United States Patent and Trademark Office ("USPTO").

24. The '172 Patent is among the patents that Impulse has been awarded.

25. The '172 Patent was legally and duly issued on March 15, 2011 and claims priority to Impulse's original application filed on March 9, 2000. A true and correct copy of the '172 Patent is attached as **Exhibit A**.

## HeartMedia's Infringement

26. iHeartMedia has infringed and continues to infringe the '172 Patent through the use of systems that enable the broadcast of enhanced features of HD Radio broadcasting, including iTunes® Tagging, Artist Experience®, Total Traffic Network® content, and artist and title information.

27. Following the issuance of the '172 Patent, Impulse put iHeartMedia (then Clear Channel) on actual notice of the '172 Patent.

28. By letter dated March 14, 2012, Impulse informed Clear Channel's Chairman and CEO that at least the "iTunes Tagging" and "Artist Experience" data services promoted by Clear Channel practiced the technology claimed in the '172 Patent and offered to discuss a non-exclusive licensing arrangement with Clear Channel.

29. Clear Channel responded to the March 14, 2012 letter by email on July 10, 2012, which sought clarification on licensing terms in order to "help us in evaluating how to proceed." In a letter dated July 24, 2012, Impulse provided clarification on potential licensing terms and reiterated that "Impulse Radio's inventions have pioneered the way for the supplemental data services the industry enjoys today in features such as iTunes Tagging and Artist Experience" and offered to discuss a licensing structure with Clear Channel.

30. Clear Channel did not respond to Impulse's July 24, 2012 letter. Instead, iBiquity responded as Clear Channel's purported licensor.

31. Despite actual knowledge of the '172 Patent and Impulse's claims of infringement, iHeartMedia continues to infringe the '172 Patent.

### iBiquity's Interest in Impulse's Technology

32. In August 2000, after Impulse invented enhanced data services technology and filed a provisional patent application to protect it, iBiquity was formed through the merger of Lucent Digital Radio and USA Digital Radio.

33. iBiquity is, in essence, an industry consortium whose investors include fifteen of the nation's largest radio broadcasters. Among the original iBiquity investors was Clear Channel, which subsequently changed its name to iHeartMedia.

34. In January 2001, Impulse demonstrated its enhanced data technology to employees of the newly formed iBiquity as well as employees of various radio broadcasters at the Consumer Electronics Show ("CES") in Las Vegas, including those from radio broadcasting companies who were among the investors in iBiquity.

35. Impressed by Impulse's technology, iBiquity invited Impulse to demonstrate its technology to the broadcast industry at iBiquity's booth at the National Association of Broadcasters ("NAB") Conference in Las Vegas in April 2001, where Impulse presented a computer simulation of the types of data services that would be enabled by Impulse inventions.

36. In September 2001, iBiquity invited Impulse to demonstrate its technology to the radio industry at iBiquity's booth at the NAB Radio Conference in New Orleans, where Impulse again presented a computer simulation of the types of data services that would be enabled by Impulse inventions.

37. In October 2001, iBiquity invited Impulse to join iBiquity and others to promote the data service capabilities of IBOC and to present Impulse's enhanced data service technologies at the first Digital Radio Wireless Data Conference in Detroit.

38. In January 2002, iBiquity and receiver manufacturers, such as Kenwood, Alpine, Sony, Visteon, Delphi, and chip manufacturer Texas Instruments invited Impulse to present its enhanced data service technologies at the CES trade show in Las Vegas and to provide simulated IBOC broadcasts showcasing Impulse's proprietary technology.

39. In April 2002, iBiquity once again invited Impulse to present Impulse's enhanced data service technologies at the iBiquity booth at the NAB trade show in Las Vegas and provide simulated IBOC broadcasts showcasing Impulse's proprietary technology.

40. In September 2002, Impulse and iBiquity embarked on an "Extreme Digital Road Show" together across the United States with and at the invitation of a leading proponent of IBOC, Harris Broadcast, to generate industry excitement for IBOC digital radio. At these shows, Impulse performed stage demonstrations and presented seminars concerning its data services technology, showing how its technology could revolutionize the radio industry.

41. Impulse's development and marketing efforts led to industry-wide recognition as a leading developer of broadcasting data applications.

42. Today, some 3,020 broadcast program channels are available on nearly 2,000 HD Radio stations in the United States while the data services claimed in the '172 Patent are featured by iBiquity and iHeartMedia in their marketing materials.

### AGREEMENTS BETWEEN IMPULSE AND IBIQUITY

43. Separately from its efforts to develop enhanced data services technology, on September 20, 2001, Impulse entered into a Standards Development Agreement (the "SDA") with iBiquity in order to develop uniform standards for the formatting and presentation of data services for transmission over an IBOC broadcast system (the "Standards Work").

44. The SDA made clear that certain technology invented and developed by Impulse, including the technology now claimed in the '172 Patent (collectively, the "Impulse Technology"), was not part of the Standards Work and therefore not among the limited rights conveyed to iBiquity.

45. On January 6, 2003, Impulse and iBiquity entered into an Agreement and Release Agreement Regarding Standards Development Agreement ("Release Agreement").

46. The Release Agreement identified the specific developments which were conceived as part of the Standards Work (the "Developments"). The Release Agreement defined the Developments as the property of Impulse, with iBiquity retaining a license to use the Developments and a limited right to sublicense a portion of the Developments. The Developments did not include the Impulse Technology.

47. The Release Agreement did not grant iBiquity a license to use or a right to sublicense the Impulse Technology. To the contrary, the Release Agreement explicitly prohibited iBiquity from using the Impulse Technology without Impulse's express written consent.

48. In violation of these contractual obligations, iBiquity claims to have sublicensed to its broadcasters, including iHeartMedia, the Impulse Technology.

49. In an August 22, 2012 letter, iBiquity acknowledged that Impulse "had written to several of iBiquity's HD Radio broadcast partners" about their infringement of the '172 Patent. In the letter, iBiquity erroneously claimed that the 2003 Release Agreement granted iBiquity a royalty-free, perpetual license to use the Impulse Technology, with a right to sublicense, and that its broadcast partners, including iHeartMedia, were "beneficiaries of these sublicense rights."

50. iBiquity has never disclosed to Impulse any specific information regarding, or a copy of, the purported sublicenses between it and its broadcast partners.

51. In response to iBiquity's August 22, 2012 letter, Impulse rejected iBiquity's "unexplained assertion" that license and sublicense rights existed to the '172 Patent. By letter dated September 27, 2012, Impulse explained in detail, quoting directly from the agreements, how iBiquity did not have a license or right to sublicense the Impulse Technology. Impulse copied iHeartMedia on the letter.

52. Neither iHeartMedia nor iBiquity responded to Impulse's September 27, 2012 letter.

53. Meanwhile, the law firm of Jones Day, which had represented iBiquity and its related entities in several transactions and in patent prosecution matters, petitioned the USPTO for an *ex parte* reexamination of the '172 Patent on behalf of an anonymous party.

54. Impulse did not participate in the reexamination.

55. On February 7, 2013, the USPTO issued a Reexamination Certificate confirming the patentability of all eighteen claims of the '172 Patent without any amendments. Specifically, the USPTO stated that "no amendments have been made to the patent" and that, "as a result of reexamination, it has been determined that: The patentability of claims 1-18 is confirmed." A true and correct copy of the Ex Parte Reexamination Certificate for the '172 Patent is attached as **Exhibit B**.

## COUNT I
### (Declaratory Judgment -- iBiquity)

56. The allegations contained in the foregoing paragraphs are re-alleged and incorporated herein by reference.

57. iBiquity has claimed that it has a license to use the Impulse Technology under the 2003 Release Agreement.

58. Impulse has rejected iBiquity's claim to have a license to use the Impulse Technology under the Release Agreement or any other arrangement.

59. An actual controversy has arisen concerning iBiquity's claim to having rights to use Impulse Technology.

60. A judgment declaring iBiquity's rights would resolve this controversy.

## COUNT II
### (Declaratory Judgment -- iBiquity/iHeartMedia)

61. The allegations contained in the foregoing paragraphs of the complaint are re-alleged and incorporated herein by reference.

62. iBiquity has claimed that it has the right to sublicense the Impulse Technology to its broadcasting partners, including iHeartMedia. iBiquity has further claimed that iHeartMedia is a "beneficiary" of this sublicense right.

63. Impulse has rejected iBiquity's claim to having rights in the Impulse Technology or the right to sublicense the Impulse Technology to others.

64. An actual controversy exists concerning iBiquity's right to grant sublicenses to the Impulse Technology and iHeartMedia's sublicense rights to the Impulse Technology.

65. A judgment declaring the rights of iBiquity and iHeartMedia would resolve this controversy.

## COUNT III
### (Breach of Contract -- iBiquity)

66. The allegations contained in the foregoing paragraphs of the complaint are re-alleged and incorporated herein by reference.

67. The 2003 Release Agreement is a valid and enforceable agreement between iBiquity and Impulse.

68. The 2003 Release Agreement prohibits iBiquity from using the Impulse Technology without the express written consent of Impulse.

69. iBiquity has breached the Release Agreement's covenant not to use the Impulse Technology by purportedly licensing such technology to its broadcast partners, including iHeartMedia, without Impulse's express written consent.

70. iBiquity's breach of the Release Agreement has caused damage to Impulse, and has caused iBiquity to be unjustly enriched.

## COUNT IV
### (Infringement of U.S. Patent No. 7,908,172 – iHeartMedia)

71. The allegations contained in the foregoing paragraphs of the complaint are re-alleged and incorporated herein by reference.

72. Impulse is the owner of all right and title to the '172 Patent, which was validly issued on March 15, 2011.

73. iHeartMedia infringes at least claims 10 and 18 of the '172 Patent by making, using, offering for sale and/or selling systems which procure and transmit supplemental information that enable the broadcast of HD Radio features, including iTunes Tagging, Artist Experience, Total Traffic Network content, and artist and title information, without Impulse's authorization or consent.

74. Despite being put on actual notice that it does not have a sublicense to the '172 Patent, and even after the petition for reexamination of the '172 Patent resulted in all claims of the '172 Patent being upheld by the USPTO, iHeart continues to infringe the '172 Patent.

75. iHeartMedia's acts of infringement have been knowing, willful, deliberate, and intentional.

76. Impulse has been damaged by iHeartMedia's willful infringement of the '172 Patent and is entitled to compensation in an amount to be determined at trial, but no less than a reasonable royalty.

## COUNT V
### (Induced Infringement of U.S. Patent No. 7,908,172 – iBiquity)

77. The allegations contained in the foregoing paragraphs are re-alleged and incorporated herein by reference.

78. On information and belief, iBiquity had actual knowledge of the '172 Patent prior to August 22, 2012 when it sent a letter to Impulse in response to Impulse's notice of infringement of the '172 Patent to iHeartMedia.

79. iBiquity has induced and continues to induce iHeartMedia to infringe the '172 Patent by encouraging and/or instructing iHeartMedia to utilize systems and methods for procuring and transmitting supplemental information that enable the broadcast of HD Radio features, including iTunes Tagging, Artist Experience, Total Traffic Network content, and artist and title information.

80. Despite being put on actual notice that it does not have a license to the '172 Patent or the right to sublicense the '172 Patent, and even after the petition for reexamination of the '172 Patent resulted in all claims of the '172 Patent being upheld by the USPTO, iBiquity continues to encourage iHeartMedia to infringe the '172 Patent.

81. iBiquity has possessed and continues to possess a specific intent to encourage iHeartMedia to infringe the '172 Patent.

82. iBiquity's induced infringement is in violation of 35 U.S.C. § 271(b).

83. Unless and until enjoined by this Court, iBiquity will continue to induce iHeartMedia to infringe the '172 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Impulse respectfully requests that this Court enter a judgment:

A. Declaring that iBiquity does not have a license to the Impulse Technology;

B. Declaring that iBiquity does not have the right to sublicense the Impulse Technology;

C. Declaring that iHeartMedia does not have a sublicense to the Impulse Technology;

D. That iBiquity has breached the 2003 Release Agreement;

E. That iHeartMedia and iBiquity infringe the '172 Patent;

F. That iHeartMedia's and iBiquity's infringement of the '172 Patent was willful;

G. Awarding damages to Impulse for iBiquity's breach of the 2003 Release Agreement;

H. Awarding enhanced damages pursuant to 35 U.S.C. § 284 for iHeartMedia's and iBiquity's willful infringement of the '172 Patent;

I. Finding that this case is exceptional pursuant to 35 U.S.C. § 285 and awarding Impulse its reasonable attorneys' fees, costs, and expenses;

J. Permanently enjoining iHeartMedia and iBiquity from making, using, importing, offering for sale and/or selling the technology claimed in the '172 Patent, including but not limited to, for the purposes of procuring and transmitting iTunes Tagging, Artist Experience, Total Traffic Network content and artist and title information;

K.     Permanently enjoining iHeartMedia and iBiquity from using the Impulse Technology;

L.     Awarding Impulse pre-judgment and post-judgment interest; and

M.     Awarding Impulse such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

IMPULSE RADIO LLC
By its attorneys,

_____
Christian W. Habersaat
NYS #4434932; SDNY #CH6755
chabersaat@goulstonstorrs.com
Jonathan A. Grippo
NYS #4594099; SDNY #JG5276
jgrippo@goulstonstorrs.com
GOULSTON & STORRS P.C.
885 Third Avenue, 18th Floor
New York, New York 10022
(212) 878-6900

Of Counsel:

Jennifer Furey (*pro hac vice motion to be filed)
jfurey@goulstonstorrs.com
Barbara Moore (*pro hac vice motion to be filed)
bmoore@goulstonstorrs.com
Derek B. Domian (*pro hac vice motion to be filed)
ddomian@goulstonstorrs.com
Andrew O'Connor (*pro hac vice motion to be filed)
aoconnor@goulstonstorrs.com
GOULSTON & STORRS P.C.
400 Atlantic Avenue
Boston, MA 02110
(617) 482-1776